UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————————

UNITED STATES OF AMERICA,

        - against -

JONATHAN TORRES,
                Defendant.
———————————————————————————

23-cr-395 (JGK)

<u>MEMORANDUM OPINION</u>
<u>AND ORDER</u>

**JOHN G. KOELTL, District Judge:**

Defendant Jonathan Torres was found guilty by a jury of two counts of a seven-count indictment. The defendant then pleaded guilty to two additional counts of the indictment in satisfaction of all the remaining counts against him. The defendant now contends that his trial counsel provided ineffective assistance of counsel in explaining the Government's plea proposal prior to the defendant's conviction at his trial.

The defendant seeks to vacate his conviction after trial, pursuant to Federal Rule of Criminal Procedure 33, and to withdraw his subsequent guilty plea to the two additional counts pursuant to Federal Rule of Criminal Procedure 11(d)(2)(B). The defendant also seeks to plead guilty pursuant to the informal plea proposal that the Government discussed with defense counsel prior to the defendant's jury trial conviction. For the reasons that follow, the defendant's motion is **denied.**

I.

On August 2, 2023, a grand jury returned an indictment charging the defendant with five counts: (1) distribution of narcotics, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(C); (2) possession of a firearm in relation to the distribution of narcotics, in violation of 18 U.S.C. § 924(c)(1)(A)(i); (3) carjacking, in violation of 18 U.S.C. §§ 2119 and 2; (4) Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951 and 2; and (5) use of a firearm, which was brandished, in connection with the carjacking and Hobbs Act robbery, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and (ii), and 2.[1] See ECF No. 9. On January 11, 2024, the defendant filed motions to sever Counts One and Two from Counts Three through Five, and to suppress certain evidence. See ECF No. 32.

In late January 2024, the Government informed the defense that it planned to obtain a superseding indictment, charging the defendant with offenses relating to the use of stolen debit cards between September 2022 and June 2023. Decl. of Jesse M. Siegel ("Siegel Decl.") ¶¶ 6, 8-9, ECF No. 122. The Government planned to charge the defendant with wire fraud, in violation of 18 U.S.C. § 1342 and 2, (proposed "Count Six"); and aggravated

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

identity theft, in violation of 18 U.S.C. §§ 1028A(a)(1), 1028A(b), and 2 (proposed "Count Seven"). Id. ¶ 6. If convicted of all counts — including the Government's anticipated wire fraud and identity theft charges — the defendant faced a Sentencing Guidelines range of 205 to 214 months' imprisonment, with a mandatory minimum sentence of 168 months' (or 14 years') imprisonment. Id. ¶ 9.

On January 28, 2024, the Government approached defense counsel to propose a plea agreement wherein the defendant would plead guilty to three of the charges against him: distribution of narcotics, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(C) (Count One); possession of a firearm in relation to the distribution of narcotics, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Two); and aggravated identity theft, in violation of 18 U.S.C. §§ 1028A(a)(1), 1028A(b), and 2 (Count Seven). Id. ¶ 10; Ex. A to Siegel Decl. ECF No. 122-1. Under this proposal, the defendant faced a Sentencing Guidelines range of 96 to 102 months' imprisonment with a mandatory minimum of 84 months' (or 7 years') imprisonment.[2] Siegel Decl. ¶ 10. The Government asked defense counsel to inform the Government of the defendant's position by the following day. Id. ¶ 11.

---

[2] The 84 months' mandatory minimum term of imprisonment consists of 60 months for Count Two (possession of a firearm in relation to the distribution of narcotics) and 24 months for Count Seven (aggravated identity theft). See Ex. A. to Siegel Decl.

The defendant's counsel at the time, Zachary Margulis-Ohnuma ("Margulis-Ohnuma") and Tess M. Cohen ("Cohen"), assert that they had previously attempted to persuade the defendant to initiate plea discussions. See Declaration of Zachary Margulis-Ohnuma ("Margulis-Ohnuma Decl.") ¶ 17, ECF No. 129-1. Margulis-Ohnuma maintains that before the January plea proposal, he explained the Government's evidence to the defendant and the defendant's mother, including that several officers would testify against the defendant at trial, and that it would be in the defendant's best interest to engage in plea discussions. Id.

On January 29, 2024, after receiving the plea proposal from the Government on January 28, 2024, Margulis-Ohnuma and Cohen met with the defendant and the defendant's cousin for approximately twenty-to-thirty minutes. Declaration of Tess M. Cohen ("Cohen Decl.") ¶¶ 4-5, ECF No. 129-2; Declaration of Jonathan Torres ("Torres Decl.") ¶ 10, ECF No. 123. Cohen asserts that she explained the mandatory minimums and Sentencing Guidelines ranges that the defendant would face if he pleaded guilty, compared with the possible sentence if he were convicted of all seven counts at trial. Cohen Decl. ¶¶ 7-8. The defendant, in contrast, claims that he does not recall his attorneys explaining his sentencing exposure. Torres Decl. ¶ 13. Nor does the defendant recall his attorneys ever explaining to him how a trial was conducted. Id. ¶ 11. However, the defendant does not

4

deny that his attorney conveyed to him the specifics of the Government's plea offer. Cohen agrees that she never discussed the specifics of how trial would be conducted, although she recalls outlining the key evidence against the defendant. Cohen Decl. ¶ 19. Margulis-Ohnuma represents that the defendant "implied that he understood what a trial was and was offended when [Margulis-Ohnuma] tried to explain various points of federal procedure that would have made it difficult for [the defendant] to prevail." Margulis-Ohnuma Decl. ¶ 11.

At the meeting with defense counsel, the defendant was reluctant to take the plea agreement and "repeatedly stated that he believed the [G]overnment would come back with a better offer." Cohen Decl. ¶ 13. Cohen informed the defendant that this was unlikely but the defendant "still maintained that the [G]overnment would make him a better offer if he held out." Id. While Margulis-Ohnuma does "not recall whether [he] explicitly advised [the defendant] to accept the seven-year plea," Margulis-Ohnuma does recall generally advising the defendant that accepting the plea agreement would be in the defendant's best interest. Margulis-Ohnuma Decl. ¶ 20. The defendant does not deny that his counsel advised him that the plea offer was in his best interest or that he stated that he thought the Government would make a better offer.

Ultimately, the meeting between the defendant and defense counsel broke down after approximately twenty-to-thirty minutes, and the defendant did not agree to accept the plea offer. On January 29, 2024, at 8:00 p.m., defense counsel advised the Government that the defendant would not accept the proposed plea agreement and would not seek an adjournment of the trial date. Siegel Decl. ¶ 12.

The defendant asserts that he "believe[s] he smoked marijuana shortly before the meeting," and although Cohen does not recall thinking that the defendant was high at the time of the meeting, in retrospect she recalls that the defendant smelled strongly of marijuana. See Torres Decl. ¶ 9; Cohen Decl. ¶ 12 (observing that "[t]he odor was so strong that when [the defendant] left the office, the smell of marijuana lingered").

On February 5, 2024, a grand jury returned a superseding indictment, adding charges relating to the use of stolen debit cards as Counts Six and Seven. ECF No. 36.

On February 26, 2024, the Court held an evidentiary hearing on the defendant's suppression motion. At the hearing, officers who participated in the defendant's February 11, 2023, and June 15, 2023, arrests testified. ECF No. 56. On March 22, 2024, the Court granted in part and denied in part the defendant's motion to suppress evidence. The Court denied the defendant's motion to suppress evidence recovered from him incident to his February

13, 2023, arrest, which was the occasion for Counts One and Two of the indictment. See United States v. Torres, No. 23-cr-395, 2024 WL 1251186, at *10 (S.D.N.Y. Mar. 22, 2024). The Court also denied the defendant's motion to suppress evidence recovered incident to his June 15, 2024, arrest. Id. at *11. The Court granted the defendant's motion to suppress a firearm seized in conjunction with the June 15, 2024, arrest. Id. at *13. The Court granted the defendant's motion to sever Counts One and Two from the remaining counts. Id. at *15.

On April 10, 2024, the defendant proceeded to trial on Counts One and Two, and the jury rendered a guilty verdict on both counts. On April 12, 2024, after the trial on Counts One and Two, and before proceeding to trial on Counts Three through Seven, Torres pleaded guilty to Counts Five and Seven.[3] The defendant pleaded guilty pursuant to a plea agreement that covered his liability on all remaining counts. See Tr. of April 12, 2024, Proceedings, ECF No. 101. The defendant pleaded guilty after a thorough plea allocution in which the defendant admitted that he was pleading guilty knowingly and voluntarily and at which counsel for the defendant and the Government represented that they had no basis to doubt the defendant's competence. Id.

---

[3] The counts to which the defendant eventually pleaded guilty carry a mandatory minimum sentence of nine years: 84 months for Count Five, and 24 months for Count Seven.

at 14:16-21, 15:22-16:6, 17:17-23. During the plea allocution, the defendant stated that he understood that, pursuant to his plea agreement, he was pleading guilty to charges carrying a mandatory minimum sentence of nine years' imprisonment. See id. at 25:25-26:7.

On February 24, 2025, some ten months after his guilty plea, the defendant, represented by new counsel, moved pursuant to Federal Rule of Criminal Procedure 33 to vacate his conviction on Counts One and Two of the indictment. See ECF No. 121. The defendant also sought to vacate his guilty plea to Counts Five and Seven of the indictment, pursuant to Federal Rule of Criminal Procedure 11(d)(2)(B), and sought to plead guilty pursuant to the informal plea offer made by the Government in satisfaction of all the counts against him. See id.

In support of his motion, the defendant argues that he did not appreciate fully the advantage of the Government's plea proposal and that his counsel was ineffective in conveying the Government's plea proposal to him. See Mem. of Law. in Support of Mot. ("Br.") 6-10, ECF No. 124. The defendant also argues that he had smoked marijuana before his meeting with his defense counsel where the Government's proposal was conveyed. Id. at 8. He also argues that he had limited intellectual capacity to appreciate the Government's plea offer. Id. at 8. In support of

that argument, the defendant's new counsel submitted a report dated February 13, 2025. See Ex. B to Siegel Decl., ECF No. 122-2. The report, prepared by a forensic psychologist, indicates that the defendant has an IQ of 66 — suggesting severe intellectual disability. See id. at 9. The defendant claims that if he had "seen the discovery, understood how a trial is conducted, known what evidence would be introduced at trial, known the police officer who arrested [him] would testify at trial, and understood that [he] would be facing a minimum of 14 years in prison if [he] went to trial and lost, [he] would have accepted the plea offer with a 7-year mandatory minimum made in January 2024." Torres Decl. ¶ 15.

The defendant now makes a tripartite request. He seeks to vacate his conviction by a jury on Counts One and Two pursuant to Federal Rule of Criminal Procedure 33. He then seeks to vacate his guilty plea to Counts Five and Seven pursuant to Federal Rule of Criminal Procedure 11(d)(2), despite the fact that he pleaded guilty pursuant to a plea agreement and does not dispute that he pleaded guilty knowingly and voluntarily to those counts in satisfaction of all the remaining counts. Finally, he seeks to require the Government to abide by its previously rejected plea proposal in satisfaction of all the counts against him.

II.

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." A motion for a new trial "grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." Fed R. Crim. P. 33(b)(2). "[I]neffective assistance claims do not present new evidence within the meaning of Rule 33." United States v. Castillo, 14 F.3d 802, 805 (2d Cir. 1994). In this case, the Court granted the defendant an extension of time to file his Rule 33 motion, and the defendant has therefore satisfied Rule 33's timing requirement. See ECF No. 120 (extending the time to file Rule 33 motions for "good cause shown").

Federal Rule of Criminal Procedure 11(d)(2)(B) provides that a defendant may withdraw a guilty plea "after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." The defendant bears the "burden of demonstrating valid grounds for withdrawal." United States v. Adams, 448 F.3d 492, 498 (2d Cir. 2006). In evaluating whether the defendant has met his burden, courts consider factors such as, "(1) the amount of time that has elapsed between the plea and the motion; (2) whether the defendant has asserted a claim of legal

10

innocence; and (3) whether the government would be prejudiced by a withdrawal of the plea." United States v. Doe, 537 F.3d 204, 210 (2d Cir. 2008).

"Ineffective assistance of counsel during plea negotiations can invalidate a guilty plea and make granting withdrawal [of a plea] appropriate, to the extent that the counsel's deficient performance undermines the voluntary and intelligent nature of [the] defendant's" plea. United States v. Arteca, 411 F.3d 315, 320 (2d Cir. 2005). The same is true in the context of a motion for new trial. See United States v. Marmorato, 107 F. App'x 244, 245 (2d Cir. 2004) (summary order) (considering a motion for a new trial premised on the ineffective assistance of counsel).

Ineffective assistance of counsel is evaluated under the Strickland v. Washington standard, which requires the defendant to demonstrate that: "(1) counsel's performance fell below an objective standard of reasonableness according to prevailing professional norms, and (2) it is reasonably likely that prejudice occurred — i.e., that but for counsel's unprofessional errors, the result of the proceeding would have been different." Arteca, 411 F.3d at 320 (citing Strickland v. Washington, 466 U.S. 668, 687-96 (1984)); see also Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003) (same).

11

### III.

### A.

The standard for ineffective assistance of counsel is strict. See Kimmelman v. Morrison, 477 U.S. 365, 382 (1986). To prevail, the defendant must show that his counsel's performance fell below an objective standard of reasonableness such that counsel was not acting as the Constitution required. See Strickland, 466 U.S. at 687 (the defendant bears the burden of showing "that counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment"). Moreover, counsel's performance must be viewed as of the time that counsel's judgment was being exercised – not with the benefit of hindsight. See Bell v. Cone, 535 U.S. 685, 698 (2002) ("[E]very effort must be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.").

To establish a Sixth Amendment violation in the context of a decision to plead guilty, the defendant must establish that his counsel failed to communicate a plea offer, United States v. Brown, 623 F.3d 104, 112 (2d Cir. 2010), or failed to provide objectively reasonable advice about the decision to plead guilty, United States v. Gordon, 156 F.3d 376, 380 (2d Cir. 1998). "As part of this advice, counsel must communicate to the

12

defendant the terms of the plea offer, and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." Purdy v. United States, 208 F.3d 41, 45 (2d Cir. 2000). But while defense counsel must provide competent advice in connection with a decision to plead guilty, the decision whether or not to plead guilty ultimately belongs to the defendant. See id. at 44-45 ("Counsel's conclusion as to how best to advise a client in order to avoid, on the one hand, failing to give advice and, on the other, coercing a plea enjoys a wide range of reasonableness because representation is an art.").

There is no question that defense counsel adequately explained the plea offer to the defendant. Defense counsel discussed with the defendant the strength of the evidence that the Government would present at trial and advised the defendant that – at a minimum – he was likely to be convicted on counts carrying a mandatory sentence of nine years' imprisonment. Margulis-Ohnuma Decl. ¶¶ 18, 20; Cohen Decl. ¶ 9-10, 15-16. Defense counsel also compared the defendant's sentencing exposure were the defendant to proceed to trial with his exposure were he to plead guilty, and informed the defendant that the plea proposal was favorable to the defendant if he wanted to minimize his time spent in prison. Margulis-Ohnuma

13

Decl. ¶ 18, 20; Cohen Decl. ¶ 7-8, 16.

When defense counsel was unsure if the defendant fully understood the plea offer, defense counsel requested the defendant's cousin to join the meeting as the plea offer was explained for a second time. Cohen Decl. ¶ 14-17. Cohen reiterated that if the defendant were to proceed to trial, the "best case scenario" was that he would face a nine-year mandatory minimum sentence, and that if he was convicted of all charges, he would face a fourteen-year mandatory minimum sentence.[4] Id. ¶ 17. Moreover, this conference followed a series of discussions that defense counsel had with the defendant in which the defendant repeatedly professed his innocence and did not give any indication of wishing to plead guilty. See Margulis-Ohnuma Decl. ¶¶ 11, 17, 19, 22. Although defense counsel conveyed that the plea was in the defendant's best interest, the defendant indicated that he believed the

---

[4] The fourteen-year mandatory minimum sentence consists of: 60 months' imprisonment for Count Two (possession of a firearm in relation to the distribution of narcotics), 84 months' imprisonment for Count Five (use of a firearm, which was brandished, in connection with carjacking and Hobbs Act robbery), and 24 months' imprisonment for Count Seven (aggravated identity theft). See Ex. B. to Siegel Decl. The nine-year mandatory minimum sentence assumes an acquittal on Count Two.

14

Government would come forth with a better offer and, therefore, rejected the plea. Id. ¶ 20, Cohen Decl. ¶ 13.

The defendant now argues that defense counsel should have done more to assure that the defendant knew how favorable the plea offer was. But defendant's counsel did explain that the plea was in the defendant's interest; however, the defendant believed that the Government would later provide a more favorable plea. Margulis-Ohnuma Decl. ¶¶ 17, 20; Cohen Decl. ¶¶ 13, 16-17. Even if it "may have been desirable for [defense counsel] to have pushed [the defendant] harder to accept that offer, there is no persuasive evidence that [defense counsel] inaccurately conveyed the terms of the offer or that he offered unfounded estimates about the strength of the government's case or [the defendant]'s defenses. [The defendant] elected to roll the dice at trial in hopes of an acquittal. That he gambled and lost is not the fault of his counsel." Sanders v. United States, No. 12-cr-574, 2016 WL 3645198, at *16 (S.D.N.Y. June 30, 2016).

The defendant also argues that there is reason to believe he did not fully understand the plea offer, and that defense counsel should have done more to assure that the defendant understood the plea. In support of his motion, the defendant submitted a psychological evaluation that concludes, in part, that the defendant has an IQ of 66 and that "intellectually and cognitively speaking, he is functioning notably below average

15

with respect to his general intelligence." See Ex. B to Siegel Decl. 9. Defense counsel could not have been aware of the psychological evaluation, which is dated more than ten months after defense counsel communicated the plea offer to the defendant, and was prepared at the request of new defense counsel in support of a possible post-conviction motion. There is no evidence that defense counsel at the time was aware of the defendant's IQ score, and there were many indications of the defendant's cognitive abilities. Indeed, defense counsel had been interacting with the defendant for many months and did not believe that the defendant was incapable of understanding the plea offer. See Margulis-Ohnuma Decl. ¶¶ 11, 12, 25; Cohen Decl. ¶ 22. Moreover, when the defendant eventually pleaded guilty to two additional charges, the Court determined that the defendant was competent to do so, and neither defense counsel nor the Government questioned the defendant's competence. See Tr. of April 12, 2024, Proceedings 14:16-21, 15:22-16:6, 17:17-23. Finally, current defense counsel does not suggest that the defendant was not competent at any time.

The defendant asserts that he had likely smoked marijuana prior to his plea discussions with counsel, an account that is corroborated by defense counsel's recollection of the defendant's behavior at the time and the smell of marijuana. See Torres Decl. ¶ 9; Cohen Decl. ¶ 12. But the Court had previously

16

allowed the defendant to use marijuana for medicinal purposes because of the defendant's physical condition. Therefore, it was not objectively unreasonable for defense counsel to continue meeting with the defendant just because the defendant had smoked marijuana. And, in any event, the defendant has presented no evidence that his marijuana use prevented him from understanding the terms of the plea offer or from making a rational decision as to whether to accept that offer.

At oral argument on the defendant's motion, the Court asked the parties to identify comparable cases where courts have decided whether similar conduct of defense counsel rose to the level of constitutionally ineffective assistance of counsel. See Tr. of July 31, 2025, Proceedings 35:5-7, ECF No. 141. The Government produced numerous cases where similar circumstances – particularly low IQ scores by a defendant – did not mean that defense counsel was constitutionally ineffective in conveying a plea offer to the defendant. See, e.g., Bazzley v. Houser, No. 21-cv-2256, 2022 WL 3006220, at *17 (E.D. Pa. June 15, 2022) (no ineffective assistance of counsel when defendant rejected a plea offer, despite low IQ and mental health issues), report and recommendation adopted in relevant part, rejected in part, No. 21-cv-2256, 2022 WL 2986269 (E.D. Pa. July 28, 2022); Pena v. United States, No. 20-cv-16560, 2021 WL 3561349, at *5-6 (D.N.J. Aug. 12, 2021) (rejecting ineffective assistance of

17

counsel claim and noting that the petitioner's claims of mental disability were "directly belied" by his clear statements to the court during his plea hearing); Holt v. United States, No. 20-cr-3904, 2021 WL 4128954, at *2 (6th Cir. Jan. 5, 2021) (rejecting petitioner's claim of ineffective assistance of counsel based on counsel's alleged failure to pursue a mental health examination where there were not objective indicia of incompetence to put counsel or the district judge on notice); see also Supp. Mem. of Law in Opp. to Mot. 14-17, ECF No. 140 (collecting cases). The defendant, in contrast, has cited no comparable case in which a court found that similar circumstances constitute ineffective assistance of counsel. See Reply to Supp. Mem of Law, ECF No. 145.

For these reasons, the defendant has failed to establish that defense counsel's performance in conveying the Government's plea offer was constitutionally defective.

**B.**

The defendant's ineffective assistance of counsel claim also fails because he has not demonstrated prejudice. To satisfy the second prong of Strickland, the defendant must show that "it is reasonably likely that prejudice occurred — i.e., that but for counsel's unprofessional errors, the result of the proceeding would have been different." Arteca, 411 F.3d at 320. In this case, the defendant asserts that he would have accepted

18

the seven-year plea offer if he "had seen the discovery, understood how a trial is conducted, known what evidence would be introduced at trial, known the police officer who arrested [him] would testify at trial, and understood that [he] would be facing a minimum of 14 years in prison if [he] went to trial and lost." Torres Decl. ¶ 15. However, as the Second Circuit Court of Appeals has instructed, "in most circumstances[,] a convicted felon's self-serving testimony is not likely to be credible," Purdy v. Zedes, 337 F.3d 253, 259 (2d Cir. 2003). The defendant has no credible evidence to support his assertion that he would have accepted the Government's plea offer but for defense counsel's alleged errors. It is undisputed that defense counsel conveyed the plea offer to the defendant and explained its advantages, but the defendant maintained his innocence and believed - contrary to his lawyer's advice – that the Government would eventually produce a better offer. There is no credible evidence that the defendant would have accepted the plea offer if defense counsel had acted differently.

In its supplemental papers, the Government has offered to proceed to an evidentiary hearing on any of the issues raised by the defendant, Supp. Mem. of Law in Opp. to Mot. 21, but the defendant contends that the Government has waived any right to an evidentiary hearing by not seeking such a hearing initially, and the defendant has not sought such a hearing now. Reply to

Supp. Mem of Law. 17-18. Neither the Government nor the defendant originally sought an evidentiary hearing; instead, both parties relied on their submissions to the Court, including declarations. Based on those submissions, the defendant has failed to show that defense counsel provided ineffective assistance of counsel in conveying the Government's informal plea offer to the defendant. Therefore, no evidentiary hearing is necessary in this case. See Chang v. United States, 250 F.3d 79, 82, 86 (2d Cir. 2001) (affirming district court's decision not to hold an evidentiary hearing where the district court concluded that the written submissions on the defendant's ineffective assistance of counsel claim "reflect that [the defendant] is entitled to no relief"); United States v. Gonzalez, 647 F.3d 41, 57 (2d Cir. 2011) ("[N]o hearing need be granted when the allegations on a motion to withdraw a guilty plea before sentencing merely contradict the record, are inherently incredible, or are simply conclusory.").

## C.

Because the defendant has failed to establish that his defense counsel was constitutionally ineffective, his motions pursuant to Federal Rules of Criminal Procedure 33 and 11(d)(2)(B) must be denied.

As to the defendant's criminal conviction of Counts One and Two after his jury trial, there is no showing of ineffective

assistance of counsel such that the interest of justice requires vacating the conviction. The defendant's Rule 33 motion is therefore **denied**. See United States v. Spigelman, No. 05-cr-960, 2008 WL 84539, at *3 (S.D.N.Y. Jan. 8, 2008) ("Because [the defendant] cannot show that he received ineffective assistance of counsel, his Rule 33 motion must be denied.").

As to the defendant's guilty plea to Counts Five and Seven, the defendant has failed to establish a "fair and just" reason, Fed. R. Crim. P. 11(d)(2)(B), justifying withdrawal. First, with respect to the amount of time that has elapsed between the plea and the motion, the defendant moved for withdrawal over ten months after entering the guilty plea. See Apr. 12, 2024, Minute Entry; ECF No. 121. Second, there is no plausible claim of innocence of the specific charges to which he pleaded guilty. Indeed, the defendant has not argued he is actually innocent of the charges to which he pleaded. And while there is no showing of prejudice to the Government, any new trial would be burdensome to the witnesses. Cf. Gonzalez, 647 F.3d at 56 ("There is no burden on the government to show that it would be prejudiced by the withdrawal of the guilty plea unless the defendant has shown sufficient grounds to justify withdrawal.").

Moreover, when the defendant pleaded guilty to Counts Five and Seven, the Court conducted a thorough plea colloquy. See Tr. of April 12, 2024, Proceedings. There is no contention that the

21

defendant was not fully competent to enter into that plea on Counts Five and Seven, in satisfaction of all five remaining counts. See id. at 56 ("[G]iven the strong societal interest in the finality of guilty pleas, a defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw his guilty plea."). The defendant offers no case in which a Court permitted withdrawal of a plea under similar circumstances. The defendant's motion pursuant to Federal Rule of Criminal Procedure 11(d)(2)(B) is accordingly **denied.**

## CONCLUSION

The Court has considered all of the parties' arguments. To the extent not specifically addressed above, those arguments are either moot or without merit. For the foregoing reasons, the defendant's motion for a new trial on Counts One and Two is **denied**, and the defendant's motion to withdraw his guilty plea on Counts Five and Seven is **denied**.

**SO ORDERED.**

Dated:     **New York, New York**
           **January 6, 2026**

                                        **John G. Koeltl**
                       **United States District Judge**